## Marksberry v. Commonwealth.

(Decided October 26, 1920.)

### Appeal from Bracken Circuit Court.

Criminal Law—Venue—Change of.—The action of the trial court in a criminal case in ruling on an application for a change of venue will not be disturbed unless it clearly appears that it has abused a sound discretion.

BLAINE McLAUGHLIN and LOUIS REUSCHER for appellant.

CHARLES I. DAWSON, Attorney General, B. S. GRANNIS, WILLIAM A. BYRON, and BAXTER HARRISON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL— Affirming.

The appellant, Marksberry, was indicted in the Bracken circuit court charged with the crime of murdering Jesse Glenn, and when put upon his trial under this indictment was found guilty by the jury and his punishment fixed at life imprisonment. To reverse the judgment on the verdict he prosecutes this appeal.

The evidence upon which Marksberry was convicted was purely circumstantial but nevertheless very convincing of his guilt. Briefly recited it shows in substance that Jesse Glenn, a single man and trader in live stock who was also fond of hunting, lived in Braken county several miles from the home of Marksberry, who was a married man. Marksberry and Glenn had been acquainted

for several years and the relations between them were so friendly that Glenn often visited Marksberry and remained at his home overnight. On Sunday, November 2, 1919, Glenn, who was a man in good financial circumstances while Marksberry was hard pressed, left his home in a Ford automobile and went to the home of Marksberry, taking with him two dogs, his rifle, gun and pistol, raincoat, two pairs of shoes, and a new suit of clothes that had never been worn and stayed at Marksberry's that night. On Monday Marksberry and Glenn went into the state of Ohio in Glenn's car and that night he again stayed at Marksberry's house. On Tuesday Glenn went to the city of Augusta nearby and other places, leaving his dogs, gun, pistol, and other articles that he took with him from his home, at Marksberry's, and after visiting at several places during the day returned to the house of Marksberry early Tuesday night. Late Tuesday afternoon Glenn, who was riding in his car, met two or three men on the road and told them he was on his way to Marksberry's. He was not after this seen alive by any person so far as the evidence shows.

About seven days after this Marksberry went to the house of Claude Glenn, a brother of Jessie, riding in the Ford machine that Jesse Glenn took with him and inquired of Claude where his brother was. Claude told him he did not know and Marksberry replied that he had stayed at his house on Tuesday night but he had not seen him since the follownig Wednesday morning. He also told Claude that he had traded Jesse a Buick roadster for his Ford machine on Wednesday morning and that Jesse had gone to North or South Dakota in the Buick machine on a hunting expedition, taking with him his dogs, guns and some clothing. Shortly after this Claude becoming uneasy about the absence of his brother went to Sam Maines, who lived nearby, to make some inquiry about his brother and while there Marksberry came in and told him that he had just received a postal card from his brother Jesse written at Connersville, Indiana, but that the card had been misplaced and he could not find it. On the same day Marksberry again told him that he had seen Jesse the last time on Wednesday morning. Soon after this Claude, suspecting that Marksberry had killed his brother, secured a warrant for his arrest and also a search warrant to search his premises.

A few days later a search of the premises of Marksberry was made and some articles of clothing that Jesse

took with him to Marksberry's were found in a bread crate, with some children's clothing over them. Other articles owned by Jesse were found secreted at other places in and about the residence of Marksberry. One of Jesse's dogs was found in Ohio and another one in Mason county. The rifle was found in a store in Augusta, and the pistol in the possession of a man in Ohio. The search for the body of Jesse was continued and his trunk was found buried in a hole in the ground near Marksberry's house. Both his legs and both his arms had been cut off close to his body and his head was also cut off, by some person who had used in the dismemberment a knife and saw. The coroner testified that the members had been severed by either a surgeon or a butcher, and it is significant that Marksberry followed at times the trade of a butcher. The severed members were never found, but the trunk was thoroughly identified as that of Jesse Glenn. Continuing the search, the coat and other articles of clothing which were worn away from the house of his brother were found buried in the ground about sixty feet from the place where the body was found.

In short, nearly every article that Jesse took with him when he left the home of his brother at which he had lived was found in the possession of Marksberry or concealed about his premises or in the possession of some person to whom he had traded or sold it. Besides this it appears that Jesse had with him when he went to the home of Marksberry about $400.00 in money, and the theory of the Commonwealth is that Marksberry, who was at the time hard pressed for money, murdered Jesse for the purpose of getting possession of the money and other property that he had with him.

Marksberry in his defense testified that Glenn left his house on Wednesday morning, stating that he was going on a hunting trip; that the articles formerly owned by Glenn had been obtained by him in trades with Glenn. He did not undertake to give any explanation of how Glenn came to his death, as he claimed not to know anything about this.

On this appeal he asked a reversal upon the grounds that the court committed error in refusing his application for a change of venue, that error was committed in the instructions and in impaneling the jury, in causing soldiers to be placed in and about the court house during the trial, in admitting and rejecting evidence and in failing to admonish witnesses who were separated. The

disposition of these alleged errors will not require an extended opinion because there was really no error committed by the trial court to the prejudice of the rights of the defendant.

A motion for a change of venue was made and the court after hearing five or six witnesses for the defendant and probably twenty for the Commonwealth overruled the motion, and in so doing did not abuse the sound discretion vested in the court in respect to matters like this. If it should be held that the court under the evidence heard on the subject committed error in refusing to grant the motion, there would scarcely be any important homicide case in which it would not be the duty of the court to grant a change of venue if requested by the defendant. 'There was no such showing made as would warrant the court in ruling that the defendant could not have a fair trial in Bracken county. Of course widespread and great interest was manifested by the people on account of the horrible manner in which the crime was committed, and that there was a general desire that the perpetrator should be punished is admitted, but these circumstances are not sufficient reasons to authorize a change of venue.

There is a suggestion of error growing out of the manner in which the jury was selected, but an inspection of the record satisfies us that no error in this respect was committed, although we should say that even if error appeared, it would not be available grounds for reversal as we have written many times.

There is also some criticism on account of the failure of the court to instruct the jury upon the whole law of the case, but there is no merit whatever in this complaint, as the court fully and accurately gave to the jury every instruction to which the defendant was entitled.

The trial continued for several days and towards the end increasingly large crowds of people were in attendance, but there was no disorder or violence or threat of violence. Two days before the trial closed the court found that the officers of the court were not able to control the movements of the assembled crowd and requested that soldiers be sent in order that the crowd might be better managed than it was being or could be by the county officers. For this purpose, a company of soldiers arrived and assisted the sheriff and his deputies in keeping the court house clear of more people than could be

conveniently accommodated therein. This was the only reason why the presence of soldiers was needed and there is no fact or circumstance appearing in the record to show that the presence of the soldiers had any influence upon the jury in reaching the verdict. It is not unusual in this state in criminal trials of uncommon interest to have present soldiers for the purpose of preserving order and preventing violence and we find no fault with the action of the court in asking for the soldiers to assist the sheriff and his deputies in so controlling the crowds who frequented the court house that the trial might proceed in a dignified and orderly way.

The ground that some error was committed by the failure of the court to admonish witnesses placed under rule that they must not after they had testified discuss with other witnesses the evidence they had given is not pressed by counsel in their brief, and as no error was committed in this particular we need not spend further time discussing this ground.

It is said in the brief of counsel that errors were committed by the trial court in permitting incompetent evidence to go to the jury, but an inspection of the record assisted by brief of counsel satisfies us that no error in the admission or rejection of evidence was committed by the trial court.

In conclusion we want to say that this record is singularly free from error, considering the importance of the case and the wide scope the evidence necessarily took in establishing by circumstances the guilt of the defendant. The trial judge presided with absolute fairness; the attorney for the Commonwealth did not at any time or in any way exceed his legitimate duty. The case for the defendant was practised with skill and ability by his capable counsel and every opportunity was afforded both the Commonwealth and the defendant to present their respective contentions.

The evidence, although circumstantial, pointed so unerringly to the defendant that we have never had occasion to consider a case resting on circumstantial evidence that so completely established guilt.

Wherefore the judgment is affirmed.